# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.C. and L.C.**

**No. 21-0975** (Greenbrier County 20-JA-11 and 20-JA-12)

## MEMORANDUM DECISION

Petitioner Father S.C., by counsel Carrie F. DeHaven, appeals the Circuit Court of Greenbrier County's November 2, 2021, order terminating his custodial and parental rights to C.C. and L.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Andrew Waight, filed a response in support of the circuit court's order. The guardian ad litem, Michael R. Whitt, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his custodial and parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner abused and neglected the children as a result of his substance abuse and his untreated mental health issues. Petitioner waived his right to a preliminary hearing.

Petitioner stipulated to the allegations in the petition in May of 2020, and the circuit court adjudicated him as an abusing parent. Later in May of 2020, petitioner moved for a post-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

adjudicatory improvement period, which the court granted. As terms of his improvement period, petitioner was required to participate in a parental fitness and substance abuse evaluation; seek long-term substance abuse treatment if deemed necessary by the evaluation; seek mental health treatment and follow through with the recommendations of a psychiatrist; participate in random drug screening; participate in parenting and adult life skills classes; attend multidisciplinary treatment team ("MDT") meetings; participate in supervised visitation with the children; and maintain adequate housing and financial stability throughout the proceedings. The circuit court extended petitioner's post-adjudicatory improvement period in July of 2020, and, in November of 2020, petitioner moved for a post-dispositional improvement period, which was granted under the same terms and conditions as his first improvement period. Petitioner's post-dispositional improvement period was extended in February of 2021 and again in June of 2021. By the final dispositional hearings, which were held in October of 2021, petitioner had received a total of seventeen months of services to improve his parenting.

At the dispositional hearings, the circuit court heard evidence that petitioner had not fully complied with the terms of his improvement periods. The circuit court heard the testimony of petitioner's parental fitness evaluator, who conducted an evaluation of petitioner in June of 2020. The evaluator opined that petitioner required inpatient substance abuse treatment and "at least weekly individual psychotherapy and psychiatric consultation for medication management of depression and to monitor for psychosis." The evaluator also recommended that petitioner participate in random drug screening to monitor his substance abuse throughout the proceedings.

The circuit court also heard testimony from petitioner, a DHHR worker, a representative from the facility where petitioner was ordered to participate in drug screening, and the children's foster parent. The circuit court found that, early in the proceedings, petitioner "regularly failed to present himself for required drug screens or tested positive for controlled substances." In September of 2020, four months after the granting of his motion for a post-adjudicatory improvement period, petitioner entered an inpatient substance abuse treatment program ("drug treatment") in Kanawha County, West Virginia. However, the court noted that petitioner "enrolled in the [drug treatment] as part of an agreement concerning criminal charges then pending against him in Monroe County, West Virginia." The agreement "permitted [petitioner's] release from jail, but only if he entered [drug treatment.]" The circuit court found that petitioner completed his drug treatment in April of 2021, at which time he returned to Greenbrier County. The court considered that while petitioner "may have made progress" in addressing his substance abuse problem, he delayed seeking treatment and he returned to the community "more than a year" after the filing of the abuse and neglect petition, "leaving relatively little time for him to complete the goals reflected in the terms and conditions of his improvement period."

The court found that, following petitioner's return to the community, he was required to participate in random drug screening. Initially, petitioner participated, and his drug screen results were negative for controlled substances and alcohol. "Over time, however, [petitioner] ceased participating in drug screens when directed to do so and participated in only two of the five screens for which he was called during the month of August of 2021." The court further found that in "September and October of 2021, [petitioner] appeared for only a single drug screen, conducted on October 25, 2021." He failed to appear on ten other occasions when called to do so. The court considered that, given petitioner's substance abuse history, he had a "significant

2

risk of relapse" and his failure to participate in drug screening when directed reflected a lack of understanding of that risk. The court concluded that petitioner "submitted to screening only on those dates that he chose to do so; there [was] therefore a significant likelihood that he relapsed on one or more occasions during this time and attempted to evade detection."

Regarding petitioner's mental health treatment, the court found that petitioner scheduled an intake interview with a mental health facility after he returned to Greenbrier County from drug treatment. According to petitioner's testimony, he saw a psychiatrist at that facility three times for medication management, beginning in June of 2021. The court found that petitioner presented no evidence that he participated in individual psychotherapy as recommended by his parental fitness evaluator. The court further found that petitioner failed to provide any information regarding his mental health treatment to the MDT and concluded that there was no evidence that petitioner was following an ongoing mental health treatment plan. The court also noted that petitioner did not promptly notify the MDT when he returned to Greenbrier County, which delayed the resumption of services.

Finally, the circuit court found that petitioner's "interaction with the children during the pendency of this case [was] limited." Petitioner participated in supervised visitation with the children but could not answer questions relative to their development and well-being. Despite seventeen months of services, petitioner had not progressed "beyond a few hours of supervised visitation each week," which was due in part to petitioner's late notice that he returned to the community. Additionally, the court found that petitioner was evasive or demonstrated a lack of realistic understanding of the children's needs.

Based on the evidence presented, the circuit court concluded that, after seventeen months of improvement periods, petitioner "had not reached a stage in these proceedings where the children [could] safely be entrusted into his care." The court found that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. In its final order, the court listed the factors that contributed to its decision, including petitioner's "resistance to . . . appropriate substance abuse treatment at the early stages of the case and to participating in drug screening thereafter" and petitioner's failure to provide any meaningful information regarding a mental health treatment plan. The court found that it was not in the children's best interests to continue efforts to reunify with petitioner, that the children would be in danger in petitioner's care if they were returned to him, that granting petitioner additional time would "unduly delay the integration of the children into a safe, stable, and permanent home environment," and that termination of petitioner's parental rights was necessary for their welfare. The court emphasized that the children had been in foster care for twenty months and that L.C., who was only twenty months old when the proceedings began, "ha[d] now spent more than one half of his young life thus far in foster care." Accordingly, the circuit court terminated petitioner's custodial and parental rights by its November 2, 2021, order. Petitioner now appeals this order.[2]

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current placement.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his custodial and parental rights because he had substantially remedied the conditions of abuse and neglect and substantially complied with the terms of his improvement periods. Petitioner acknowledges that he missed random drug screen opportunities in September and October of 2021 but emphasizes that he tested negative several times in May, June, July, and August of 2021.[3] He asserts that he missed opportunities to drug screen because of his work schedule. In regard to his mental health treatment, petitioner contends that he received psychiatric treatment while he was in drug treatment and also participated in individualized therapy at that facility. Then, following his completion of drug treatment, petitioner sought psychiatric treatment in Greenbrier County and participated in that treatment. Finally, petitioner asserts that he had suitable housing, was gainfully employed, and that the additional cost of childcare would have fit into his budget. Based on this evidence, petitioner asserts that the children should have been reunified with him or that a less-restrictive dispositional alternative was warranted. We find petitioner is entitled to no relief.

This Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Further, petitioner was provided the maximum period of time allowed by statute to improve, which must be considered in this Court's analysis. At the time of the October of 2021

---

[3]The evidence shows that petitioner was called to provide a drug screen sample twenty-five times from May to August of 2021. He provided nineteen samples, which were negative for controlled substances, and missed six other opportunities.

dispositional hearings, the children had been in foster care for approximately twenty months. West Virginia Code § 49-4-610(9) provides that

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

This time limit was exceeded in June of 2021, and petitioner received the benefit of four additional months to demonstrate improvement. Indeed, this Court has directed that

> [a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996).

Here, when the time for a decision came, the circuit court was not convinced that petitioner could provide for the children, and, in our view, rightly so. As the evidence showed, petitioner admitted to substance abuse and mental health issues that negatively affected his ability to parent the children. While petitioner cites to many positive aspects of his participation during his improvement period, it is clear that he failed to show that he adequately addressed his drug addiction and mental health issues. Petitioner did not consistently participate in random drug screening following his return from drug treatment. The court noted petitioner's high risk of relapse and concluded that his intermittent participation in drug screening evidenced petitioner's failure to fully grasp the seriousness of his problem or that petitioner had, in fact, relapsed and was purposefully avoiding detection. Moreover, the circuit court found that petitioner had not provided any information regarding his mental health treatment throughout the proceedings. Although petitioner provided some testimony as to the mental health treatment he received, he did not provide a treatment plan and, following his drug treatment, he did not follow through with weekly individualized therapy as recommended by his parental fitness evaluator. An improvement period is "a period in which the [DHHR] and the court should attempt to facilitate the parent's success, but wherein *the parent must understand that he [or she] bears a responsibility to demonstrate sufficient progress and improvement to justify return to him [or her] of the child*." *In re Renae Ebony W.*, 192 W. Va. 421, 427, 452 S.E.2d 737, 743 (1994) (citation omitted) (emphasis added). Petitioner failed to follow through with these terms and failed to demonstrate sufficient progress to justify return of the children.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental and custodial rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(3)

provides that there is no reasonable likelihood that the conditions of neglect and abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As discussed above, petitioner failed to follow through with two critical terms of his improvement period and failed to demonstrate that he substantially remedied the conditions of neglect or abuse during the proceedings. The circuit court also considered petitioner's actions during the proceedings that delayed his progress. Petitioner was slow to enter into a drug treatment program and did not begin the program until doing so guaranteed his release from jail in an unrelated criminal proceeding. Further, the court found that petitioner delayed informing the MDT of his return to Greenbrier County, which also delayed his progress. The circuit court found that petitioner's delays resulted in a tenuous relationship with the children and that he had not progressed beyond bi-weekly supervised visitation with the children after seventeen months of services. This Court has held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part. Ultimately, based on petitioner's failure to follow through and respond to a reasonable family case plan after an extended period of time to improve, the court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, and we find no error in that determination.

Finally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court made the necessary findings and was within its discretion to terminate petitioner's custodial and parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 2, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

6

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn